IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| In re: ) | |
| ) | |
| THOMAS D. HUTCHENS, ) | Case No. 14-41833-drd7 |
| Debtor. ) | |
| ──────────────────────── ) | |
| ) | |
| RICHARDSON HAULING, INC., ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Adv. No. 14-04075-drd |
| ) | |
| THOMAS D. HUTCHENS, ) | |
| Defendant. ) | |

MEMORANDUM OPINION

Richardson Hauling, Inc. (the "Plaintiff") filed a complaint seeking the determination that the debt owed by Thomas D. Hutchens (the "Debtor) is non-dischargeable pursuant to 11 U.S.C. §523(a)(4) and §523(a)(6).[1] This is a core proceeding under 28 U.S.C. §157(b)(2)(I) over which the Court has jurisdiction pursuant to 28 U.S.C. §§§1334(b), 157(a) and 157(b)(1). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Bankruptcy Rule 7052. For the reasons that follow, the Court finds that the debt owed by the Debtor to the Plaintiff is excepted from discharge.

I.      FACTUAL BACKGROUND

The Debtor and his wife (together, the "Hutchens") are former employees of the Plaintiff. The Debtor was hired as a driver, and his wife, Shanna, was hired as a bookkeeper. Soon after she was hired, Shanna Hutchens started embezzling funds from the Plaintiff by creating checks made out to "Hutch Trucking" or "Tommy or Shanna Hutchens," and then forging the name of either Ron or Dianna Richardson (owners of the Plaintiff) on the checks.

---

[1] The Plaintiff filed its Amended Complaint on July 11, 2014, to include §§523(a)(13) and (a)(7) as additional grounds for the non-dischargeability of the restitution debt described below.

The checks were then deposited into one of the Hutchens' bank accounts. Of the $824,394 Shanna Hutchens ultimately embezzled, $534,076.46 was deposited into an account on which the Debtor was the sole signatory.

The Hutchens spent the embezzled funds on a variety of "big-ticket" items, including a larger house and professional interior decorating services, at least 20 automotive/water vehicles, a cruise, two beauty shops, multiple trips to Las Vegas, sports tickets and rental payments on a lake house. Additionally, the couple made a federal income tax payment in the amount of $10,295.48.

The Richardsons discovered the embezzlement in October of 2008. Shanna Hutchens pled guilty on February 9, 2010, and was sentenced to 46 months of incarceration. In June, 2010, the Plaintiff brought a counterclaim for embezzlement and theft against the Debtor in a prevailing wage claim case pending in the Circuit Court of Jackson County, Missouri (the "State Court Case"). The Plaintiff alleged that the Debtor participated in and profited from the embezzlement of his spouse and that the company was damaged as a result. The Plaintiff was awarded a Default Judgment in the amount of $819,000 against the Debtor (the "Judgment Debt").

In November of 2010, the Debtor was found guilty in the United States District Court of the Western District of Missouri on seven counts of money laundering in connection to the embezzlement (the "Criminal Case"). He was ordered to pay restitution in the amount of $136,442,38.[2]

The Plaintiff asserts that the Judgment Debt is not dischargeable because it arose from a willful and malicious injury, and alternatively, because it arose from embezzlement. The Debtor denies that he embezzled or stole funds from the Plaintiff, and asserts that the amount of the

---

[2] The Debtor paid only $5,406 of the restitution ordered, and concedes that the remainder is nondischargeable.

2

Judgment Debt "has no basis in fact and is pure supposition." He contends that, at most, the amount of any non-dischargeable debt should be the amount of court-ordered restitution.

II.   DISCUSSION

A.   Willful and Malicious Injury under §523(a)(6)

To establish that a debt is nondischargeable under §523(a)(6), the party seeking to prevent discharge must show by a preponderance of the evidence that the debt is for "willful and malicious injury" to the property of another. *Johnson v. Fors*, 259 B.R. 131, 137 (8th Cir. BAP 2001); *In re Patch*, 526 F.3d 1176, 1181 (8th Cir. 2008)(the plain language of §523(a)(6) requires courts to first determine exactly what "injury" the debt is "for," and then, whether the debtor both willfully and maliciously caused that injury). In the Eighth Circuit, the terms "willful" and "malicious" are two distinct requirements. *In re Scarborough*, 171 F. 3d 638, 640 (8th Cir. 1999). The United States Supreme Court addressed the meaning of "willful" in this context:

> The word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury….the (a)(6) formulation triggers in the lawyer's mind the category of 'intentional torts,' as distinguished from negligent or reckless torts.

*Kawaahau v. Geiger*, 523 U.S. 57, 61 (1998). Other courts have defined willful as headstrong and knowing. *See, e.g., In re Long*, 774 F.2d 875, 881 (8th Cir. 1985).

To qualify as "malicious," the debtor's actions must be "targeted at the creditor…at least in the sense that the conduct is certain or almost certain to cause financial harm." *Id.*; *Erickson v. Halverson* (*In re Halverson*), 226 B.R. 22, 26 (Bankr. D. Minn. 1998)("Malicious for purposes of §523(a)(6) means that the debtor targeted the creditor to suffer the harm resulting from the debtor's intentional, tortious act."). Put another way, the threshold question is whether the

3

debtor knew that the consequences were certain, or substantially certain, to result from his or her conduct. *In re Fercho*, 39 B.R. 764, 766 (Bankr. D.N.D. 1984).

In the context of §523(a)(6), a court is free to disbelieve a debtor's testimony. *See, e.g., In re McClendon*, 765 F. 3d 501 (5th Cir. 2014)(in a defamation case, bankruptcy court was free to disbelieve the debtor's statement that he did not know the statements he made were false). Once the creditor presents circumstantial evidence of an intent to deceive, a debtor cannot overcome that inference with an unsupported assertion of honest intent. Instead, the court should consider whether the debtor's actions appear so inconsistent with his self-serving statement of intent that the proof leads the court to disbelieve the debtor. *In re Cunningham*, 482 B.R. 444, 448 (Bankr. N.D. Ala. 2012).

In determining whether the debt in question is non-dischargeable under §523(a)(6), this Court must assess whether the Debtor's conduct meets the Eighth Circuit's standards of willful and malicious. To begin with, two judgments have been entered against the Debtor: one in the State Court Case for $819,000, "[t]he amount stolen from [Richardson Hauling, Inc.]" and another in the Criminal Case for money laundering. In the Indictment, the Grand Jury in the Criminal Case made the following finding (emphasis added): "THOMAS D. HUTCHENS, defendant herein, aiding and abetting Shanna Hutchens did *knowingly* engage and cause to be engaged in a monetary transaction, in or affecting interstate commerce, in criminally derived property of a value greater than $10,000, with the funds represented by the transaction having been derived from a specified unlawful activity, and THOMAS D. HUTCHENS *knew* said monetary transaction involved proceeds of a criminal offense…" Those facts, in and of themselves, could establish that the Judgment Debt is for willful and malicious injury to the Plaintiff. Yet the Debtor's state of mind can be inferred from the record as a whole. The Debtor

4

testified that he knew nothing about his wife's scheme, yet the evidence shows that he was the sole signatory on the account into which fraudulent checks were deposited, and out of which illegal funds were withdrawn. He testified that the checks bearing his signature were forged, yet he failed to produce any evidence to substantiate that position. He testified that he first learned about his wife's embezzlement when the Richardsons discovered it and confronted him, yet he stated in the Criminal Case that he had complete control over the family finances. He testified that he never questioned the rather sudden increase in income, yet he and his wife made extraordinary purchases in a two-year period, including numerous cars and trips. And when he was questioned regarding his joint tax return, the Debtor refused to answer, pleading the Fifth Amendment. A bankruptcy court has discretion over whether a negative inference is an appropriate response to the invocation of the Fifth Amendment in a civil case. *See In re Carp*, 340 F. 3d 15, 23 (1st Cir. 2003). Here, the Court chooses to draw such an inference given the Debtor's conduct, the evidence presented in this proceeding, and the record in the State Court and Criminal Cases.

The Debtor's pleas of ignorance and innocence are so inconsistent with his conduct and extravagant lifestyle that the Court finds them to be incredible. The evidence shows that his behavior was not reckless or negligent, but deliberate, and his evasive answers at trial only confirm that. Therefore, the Court concludes that the Debtor's actions were willful.

In terms of whether the Debtor's conduct was malicious, the record demonstrates that it was undoubtedly targeted at the Plaintiff. As stated previously, it is evident that the Debtor was aware that his wife was stealing from this Plaintiff, and moreover, that he enjoyed the benefit of those funds. In the Sentencing Memorandum on which the Judgment in the Criminal Case was based, the Government notes that the Debtor "was fired after he became hostile and threatened

5

the Richardsons if they reported the crime to police." The Sentencing Memorandum contains references to additional evidence that the Debtor's actions were aimed at the Plaintiff. The Debtor told the Richardsons that he would sell one of his vehicles paid with illicit funds and pay them the proceeds as part of the restitution. Instead, he sold the Dodge Charger, yet refused to turn over the proceeds, telling the Richardsons that "we came up with some other things we have to do, so that's not going to happen." The Debtor paid a measly $5,406.06 of the restitution owed to the Plaintiff. Even *after* his wife was caught and charged in federal court, the Debtor continued to spend the embezzled proceeds on such items as a family cruise and lake house rental payments. The Government characterized the Debtor's state of mind this way: "Defendant's crimes involved an enormous level of greed, betrayal, and deception, for which he has accepted no responsibility whatsoever." All in all, it is abundantly clear that the Debtor knew the consequences of his actions. Accordingly, the Court finds that the injury caused by the Debtor was malicious.

Having concluded that the Plaintiff met its burden of proving "willful and malicious injury" within the meaning of §523(a)(6), the Court now turns to the amount of the debt to be excepted from discharge. There is no dispute that the restitution amount of $135,742.38 (less any amount previously paid by the Debtor) is non-dischargeable. The Plaintiff takes the position, however, that the total amount of the judgment in the State Court Case, $819,000, should be non-dischargeable. Inasmuch as the entire amount embezzled could not be traced to the Debtor's use, the Court rejects the Plaintiff's position. The Judgment against Shanna Hutchens for bank fraud and money laundering totaled $819,187.96. Of that amount of embezzled funds, the Government determined that $534,076.46 was deposited into the account controlled solely by the Debtor. Based on that uncontroverted evidence, the Court concludes that

6

the amount of $534,076.46 represents debt for "willful and malicious injury to the Plaintiff's property, and is therefore non-dischargeable under §523(a)(6).[3]

B.      Embezzlement under §523(a)(4)

For purposes of §523(a)(4), embezzlement is the "fraudulent appropriation of property of another by a person to whom such property has been entrusted or into whose hands it has lawfully come." *Belfry v. Cardozo (In re Belfry)*, 862 F. 2d 661, 662 (8th Cir. 1988). A plaintiff must establish by a preponderance of the evidence that the debtor was not lawfully entitled to use the funds for the purposes for which they were in fact used. *Id.*

The Debtor denies that he committed embezzlement, claiming that he did not have access to the company checks and therefore had no lawful access to the monies belonging to the Plaintiff. In other words, he did not appropriate the funds himself. However, a judgment was entered against the Debtor in the State Court Case in the amount of $819,000, the amount stolen from the Plaintiff. The Judgment Debt resulted from a counterclaim in which the Plaintiff alleged that, although Shanna Hutchens embezzled the funds, the Debtor benefitted from her criminal activity by purchasing numerous items, many of which were titled in his name.

The Plaintiff contends that Shanna Hutchens' act of embezzlement that resulted in the Judgment Debt should be imputed to the Debtor. A marital relationship is insufficient to establish a partnership or agency in order to hold a debtor liable for his spouse's fraud for nondischargeability purposes. *In re Asbury*, 441 B.R. 629, 635 (Bankr. W.D. Mo. 2010). As the Plaintiff points out, however, the Eighth Circuit authorizes imputation of fraudulent conduct in bankruptcy dischargeability proceedings under partnership, agency or conspiracy vicarious liability principles. *In re Donohue*, 2014 WL 29111 (Bankr. W.D. Mo. Jan. 3, 2014).

---

[3] That amount includes the undisputed amount of $135,742.38 of restitution debt (minus a credit for the $5,406 the Debtor already paid to the Plaintiff).

A partnership is defined under Missouri law as a contract of two or more competent persons to place their money, effects, labor and skill, or some or all of them, in lawful commerce or business and to divide the profits and bear the loss in certain proportions. *See* Mo. Stat. Ann. §358.060(a). Here, there is no indication that the Debtor and his wife were involved in a partnership according to that definition. Similarly, there is no indication that the Debtor and his wife were engaged in an agency relationship, one in which the Debtor authorized his wife to act on his behalf.

The Plaintiff asserts that the illegal acts of Shanna Hutchens should be imputed to the Debtor due to his participation with her in a conspiracy to defraud the Plaintiff, and his knowledge of the scheme. The evidence bears that out. In order to establish a conspiracy, the plaintiff must prove each of the following elements: 1) two or more persons, 2) an object to be accomplished, 3) a meeting of the minds on the object or course of action, 4) one or more unlawful overt acts, and 5) resulting damages. *In re Murray*, 408 B.R. 268, 276 (Bankr. W.D. Mo. 2009)(citing *Mackey v. Mackey*, 914 S.W.2d 48, 50 (Mo. App. 1996). It is not necessary to prove that each conspirator knew all the details or the entire plan, just that they shared the same objective and had knowledge of the nature of the conspiracy. *State Farm Mutual Insurance Co. v. Weber,* 767 S.W.2d 336, 338 (Mo. App. E.D. 1989). As the court articulated in *In re Lewis,* 424 B.R. 455 (Bankr. E.D. Mo. 2010):

> Acts intrinsically meriting non-dischargeability under §523(a) can be attributed to a debtor who did not perform them if the debtor was a 'knowing active participant' in a scheme through which a third party performed the acts. The court can except from discharge any debt imposed on the debtor under non-bankruptcy law for damage done through the conspiracy. A member of a conspiracy is vicariously liable for the acts of co-conspirators, and the law imputes liability regardless of knowledge of occurrence of the acts.

*Id*. at 460 (citations omitted). `

The Plaintiff has met its burden of proving that a conspiracy existed. The evidence demonstrated that the Debtor and his wife came to an agreement to commit unlawful overt acts, which resulted in significant damages to the Plaintiff. Both the acts and the damages were established in both the Criminal Case and the State Court Case. The Judgment reflects that the court found the Debtor guilty of money laundering, and ordered that he be imprisoned for 46 months and pay restitution in the amount of $135,742.38.

In the State Court Case, the Debtor did not appear at trial. The court therefore relied on the record and the testimony of Dianna Richardson in making the following findings and rendering judgment: "Plaintiff Hutchins embezzled and stole funds from Defendants Richardson. The amount stolen from Defendants Richardson was Eight Hundred and Nineteen Thousand and 00/100 Dollars ($819,000.00). … IT IS THEREFORE ORDERED that the Defendants Richardson Hauling, Inc. and Richardson Trucking, LLC have Judgment for and in the amount of Eight Hundred and Nineteen Thousand and 00/100 Dollars ($819,000.00), plus costs."

In this proceeding, the Debtor attempts to dispel the conspiracy theory by claiming that he and his wife didn't have a "meeting of the minds" on a course of action to embezzle funds from the Plaintiff. He testified that he first became aware of his wife's criminal activity when the Richardsons confronted her and that when he found out, "it was pretty much a shock." When asked about his knowledge regarding the checks he wrote out of his account, the Debtor gave this explanation:

> A:  …I found out after she left, what she did to the Richardsons, she ran a dummy checking account book on me. So, what was in my account wasn't actually in my account. … everything was just

9

> falsified. It was dummied. So, what I was actually looking at when I sat down and did the bills with her wasn't actually true.
>
> Q: Okay. So, she deceived you as well, is that correct?
>
> A: Yes. Yes.

Given the record in its entirety, the Debtor's portrayal of himself as an innocent victim is beyond belief. Mrs. Richardson testified that as she observed the husband and wife relationship, the Debtor "was very much in control of everything that went on on a daily basis," and that "[h]e knew exactly where Shanna was, what she was doing…A lot of phone calls every day." She also testified that she heard the Debtor tell the jury in the Criminal Case that he "had complete control over the family finances." The signature card of the bank account in which the "dummy" checks were deposited indicates that the Debtor was the sole signatory on that account. The Debtor denied endorsing and depositing any of the checks, "assuming" that his wife forged his name. When asked during cross-examination to produce the allegedly forged checks, the Debtor came up short – he failed to produce the checks themselves, handwriting samples, or any other documentary evidence to establish that his wife committed forgery and created "dummy" account records. As noted previously, the Grand Jury charged the Debtor with money laundering from embezzled deposits, finding that the Debtor, "aiding and abetting" his wife, knowingly engaged in the criminal offense. The Government's Sentencing Memorandum in the Criminal Case lists how the Debtor and his wife spent the embezzled funds, including a larger house, professional interior decorator fees, twenty vehicles (automotive and boats), two beauty shops, a cruise, Chiefs' season tickets, a personal trainer, multiple trips to Las Vegas and a rental lake house.

It strains credulity to ask the Court to believe that the Debtor was unaware that his wife was depositing hundreds of thousands of dollars into an account which he alone controlled, and that he never questioned the source of the funds or the expenditures that were at levels their income could not legitimately support. The Court finds that the Plaintiff has met its burden to prove that the Debtor acted in concert with his wife such that her embezzlement is imputed to him for purposes of this dischargeability determination. Therefore, the total amount of the Judgment Debt, $819,000, is excepted from discharge.

### III.    CONCLUSION

In summary, the Plaintiff has met its burden of proof. The record supports a finding that the Plaintiff's debt is excepted from discharge.

It is undisputed that the restitution debt resulting from the Criminal Case in the amount of $135,742.38, less any amounts previously paid to the Plaintiff, is non-dischargeable pursuant to §§523(a)(13) and (a)(7).

Of the Judgment Debt resulting from the State Court Case in the amount of $819,000, the evidence establishes that $534,076.46 was deposited into an account controlled solely by the Debtor. As that amount represents debt for "willful and malicious injury" to the Plaintiff's property, it is non-dischargeable pursuant to §523(a)(6).

Finally, the evidence establishes that the Debtor conspired with his wife to commit embezzlement, and benefitted from the illegal activity. Accordingly, Shanna Hutchens' embezzlement is imputed to the Debtor, and the total amount of the Judgment Debt against her in the amount of $819,000 is non-dischargeable pursuant to §523(a)(4).[4]

---

[4] Both of the debt amounts associated with the §§523(a)(4) and (a)(6) causes of action include the amount of the restitution debt described in this Conclusion.

11

Dated:  January 26, 2015        /s/Dennis R. Dow
                                THE HONORABLE DENNIS R. DOW
                                UNITED STATES BANKRUPTCY JUDGE